# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1888

_____

Allen G. Gibson; David Hall,           *
                                       *
            Plaintiffs,                *
                                       *
Richard St. Cloud, Sr.,                *
                                       *
            Plaintiff - Appellant,     *
                                       *
Michael Langley,                       *
                                       * Appeal from the United States
            Plaintiff,                 * District Court for the
                                       * District of South Dakota.
        v.                             *
                                       *
Doug Weber; Darrell Slykhuis;          *
Jeff Bloomberg; Kay Paa; John          *
Degreef: Eugene Regier; Herbert        *
Saloum; James H. Shaeffer; Mike Rost;  *
Healthcare Medical Technology;         *
Doneen Hollingsworth,                  *
                                       *
            Defendants - Appellees.    *

_____

Submitted:  November 18, 2005
    Filed:  January 10, 2006

_____

Before MURPHY, BOWMAN, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Richard St. Cloud, Sr.,[1] a diabetic inmate in custody of the South Dakota Department of Corrections ("DOC"), brought this action against state correctional officials and outside medical personnel, alleging deliberate indifference to his medical needs and inadequate medical facilities in violation of the Eighth and Fourteenth Amendments and state law. The district court[2] granted summary judgment in favor of all of the defendants on St. Cloud's federal claims and declined to exercise supplemental jurisdiction over the state law claim for medical malpractice. St. Cloud appeals, arguing that he has presented sufficient evidence to present his claims to a jury and that the court erred by dismissing the state claim. We affirm.

St. Cloud suffers from peripheral diabetic neuropathy, a disease which causes numbness in the feet and makes any injury to his feet a serious health risk. While incarcerated, he suffered burns to his feet during a Native American sweat lodge purification ceremony on February 22, 2001. Medical personnel wrote an order two days later requiring a daily medical shower followed by a change of dressings and the application of burn ointment. The order restricted St. Cloud from further participation in sweat lodge ceremonies until his feet healed.

St. Cloud considered the medical personnel to have "poor attitudes". After being frustrated by a twenty five minute delay waiting to have his dressings changed, he decided that he would change the dressings himself and would assume responsibility for his own care. He signed a Release of Responsibility on March 13 which stated that he was knowingly acting in noncompliance with the recommendations of medical personnel.

---

[1]Allen G. Gibson, David Hall, and Michael Langley, listed as plaintiffs in the case caption, filed a separate appeal (docketed as file 04-3932) and their issues were resolved in an opinion filed on December 15, 2005.

[2]The Honorable John A. Simko, United States Magistrate Judge for the District of South Dakota, presiding with consent of the parties.

A physician's assistant reported on the status of St. Cloud's injury on March 22. He noted that the treatment had not yet been effective and recommended skin grafting because the wounds on St. Cloud's right foot did not appear to be closing. His report noted minor areas of inflammation but did not mention the possibility of infection. Medical personnel next entered an order on April 6, ordering St. Cloud to return to health services for daily dressing changes. Doctors planned on performing a skin graft on April 10, but they noticed signs of an infection in St. Cloud's right foot during an April 9 physical. St. Cloud complained of a fever and pain on April 10, and doctors transferred him to Sioux Valley Hospital. Doctors at the hospital determined that an infection made it necessary to amputate portions of St. Cloud's right foot; they performed the amputations on April 11 and 21. He was discharged on April 24 with an order mandating daily dressing changes. St. Cloud complied with this order.

St. Cloud made numerous complaints to prison administrators relating to the sweat lodge incident on February 22. He filed grievances on February 24, and March 6, 19, and 21, seeking to have the medical restriction on his participation in sweat lodge activities lifted. He also filed a lawsuit on May 2 alleging that the restriction unconstitutionally infringed upon his religious freedom; that action was voluntarily dismissed in July. On May 9, June 4, and September 2 and 6, he filed resolution requests complaining about the quality of medical care he had received in relation to the sweat lodge injury. He filed requests for administrative remedies relating to the incident on May 13 and September 9.

St. Cloud filed the present lawsuit against medical providers and prison personnel on February 12, 2002. He alleged that Dr. Eugene Regier and Dr. James Shaeffer, employees of the South Dakota Department of Health who provided medical care to inmates, and nurse Kay Paa, an employee at the South Dakota State Penitentiary, had provided medical services that were in deliberate indifference to his

medical needs in violation of the Eighth Amendment.[3]  He also alleged that Jeff Bloomberg, then secretary of the South Dakota Department of Corrections, Darrell Slykhuis, the deputy warden, Doug Weber, the warden, and Deoneen Hollingsworth, secretary of the South Dakota Department of Health, infringed on his Eighth and Fourteenth Amendment rights by failing to provide adequate facilities, failing to train medical personnel, and failing to provide a written treatment plan.  He also alleged a medical malpractice claim based on state law.

The district court granted summary judgment in favor of the defendants, finding that there was no genuine issue of material fact supporting St. Cloud's claim that the medical providers had acted with deliberate indifference toward his condition or that the prison's administration caused his injuries.  It also found that the defendants were entitled to qualified immunity.  Having disposed of the constitutional claims, the court declined to exercise supplemental jurisdiction over the state malpractice claim and dismissed it.

St. Cloud appeals, arguing that there is a genuine issue of material fact as to whether the treatment plan designed for his injuries and the actual treatment he received was in deliberate indifference to his medical needs.  He also argues that the district court should have retained his state claim even if the federal claims were properly dismissed.  Appellees respond that St. Cloud presented no evidence establishing that their treatment was in deliberate indifference to his needs or that their treatment caused the infection which necessitated the amputations.  They also argue that they are entitled to qualified immunity and that the decision to dismiss the state

---

[3]St. Cloud conceded in his brief in the district court that summary judgment was appropriate in favor of the named defendants Mike Rost and Healthcare Medical Technology.  St. Cloud does not assert in his complaint or in his brief that he ever received treatment from defendants Herbert Saloum and John Degreef, and he does not argue in his brief that summary judgment was improper in favor of defendant Doneen Hollingsworth.  St. Cloud has thus waived his claims against these parties.

law claim is vested solely in the district court's discretion. We review the district court's grant of summary judgment de novo. Lund v. Hennepin Cty, 427 F.3d 1123, 1125 (8th Cir. 2005).

To make out an Eighth Amendment violation arising from inadequate medical attention in a state penitentiary, inmates must show "deliberate indifference" to their "serious illness[es] or injur[ies]." Estelle v. Gamble, 429 U.S. 97, 105 (1976). A showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions. Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). An inmate must prove that officials knew about excessive risks to his health but disregarded them, Logan v. Clarke, 119 F.3d 647, 649 (8th Cir. 1997), and that their unconstitutional actions in fact caused his injuries. Calloway v. Miller, 147 F.3d 778, 781 (8th Cir. 1998).

St. Cloud argues that the treatment plan designed for his right foot created an excessive risk to his health amounting to a deprivation of his constitutional rights. His left foot healed within a few days of being admitted into the hospital, and he argues that this is sufficient evidence to show that the prison's treatment plan for his right foot was so deficient as to be deliberately indifferent to his condition. Proof of causation by expert testimony is required when a plaintiff is complaining about treatment of a sophisticated injury, however. Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002). St. Cloud's argument that expert testimony is not necessary because an infection is within the realm of common knowledge overlooks the undisputed facts in this case. He recognizes that his medical condition of peripheral diabetic neuropathy predisposed him to injuries of this nature, and the record reflects that his condition worsened after he refused treatment and that the amputations only became necessary two months after the accident. Expert medical testimony was necessary to establish that the allegedly deficient treatment plan resulted in his amputations. Id.

St. Cloud also asserts that the delayed reactions to his burns and ensuing infection by prison officials evidenced deliberate indifference to his medical needs sufficient to avoid summary judgment. He argues that medical personnel should have diagnosed his injury and formulated a written treatment plan more quickly after the accident and responded sooner after his self treatment of the wounds failed to aid in his recovery. He also argues that he should not have been required to wait twenty five minutes after showering for bandages and that he was not immediately provided sufficient bandages to treat his wounds after deciding to treat the wounds himself.

To avoid summary judgment an inmate alleging that a delay in treatment constitutes a constitutional deprivation must produce medical evidence to establish that the delay had a detrimental effect. Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997). Given all the different factors that could have resulted in St. Cloud's amputations, including his decision to decline medical treatment, see Beck v. Skon, 253 F.3d 330, 333 (8th Cir. 2001), medical evidence was needed. Otherwise a reasonable juror could not determine whether delays in treatment or other factors caused the need for the amputations. Robinson, 292 F.3d 560, 564 (8th Cir. 2002). The district court did not err by granting summary judgment in favor of the defendants.[4]

St. Cloud also maintains that summary judgment was improperly entered in favor of the prison administrators. He argues that they should be held liable for the institution's failure to provide written treatment plans for all inmate injuries, for failing to provide minutes from quarterly meetings, and for failing to adequately train the prison's staff. Since St. Cloud has not shown that his care was constitutionally deficient, he is unable to prevail on this argument. See Veneklase v. City of Fargo,

---

[4]Because we conclude that St. Cloud did not submit sufficient evidence to establish his constitutional claims, it is unnecessary to discuss other defenses raised in the summary judgment motions.

248 F.3d 738, 749 (8th Cir. 2001); <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1076 (8th Cir. 1996).

Finally, St. Cloud argues that the district court erred by declining to exercise jurisdiction over the remaining state malpractice claim after dismissing his federal claims. He argues that we should reverse because the court failed to enumerate any reason for declining jurisdiction and because the interests of judicial economy, convenience, and fairness weigh in favor of maintaining supplemental jurisdiction over his state law claim. He argues that dismissal of his malpractice claim was exceptionally unfair because the statute of limitations bars him from refiling it in state court.

Under 28 U.S.C. § 1367(c)(3), a court may "decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed, and there is no basis to find an abuse of discretion here. See <u>Labickas v. Arkansas State University</u>, 78 F.3d 333, 334 (8th Cir. 1996); <u>McLaurin v. F.C. Prater, Co-1</u>, 30 F.3d 982, 985 (8th Cir. 1994).

For these reasons the judgment of the district court is affirmed.

_____